G        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

POLYGROUP LIMITED (MACAO              )
COMMERCIAL OFFSHORE) f/k/a            )
POLYTREE GROUP LTD. (MACAO            )
COMMERCIAL OFFSHORE),                 )
     Plaintiff/Counter-Defendant,     )
                                      )
             v.                       )     09 C 6454
                                      )
TREE CLASSICS, INC.,                  )
     Defendant/Counter-Plaintiff.     )

## MEMORANDUM AND ORDER

There are numerous translations of "O Tannenbaum," a German Christmas carol dating to the 1500s. The most apt for this breach of contract case about artificial Christmas trees provides, in pertinent part, "O Christmas Tree! O Christmas Tree! Thy leaves are so unchanging; Not only green when summer's here, But also when 'tis cold and drear. O Christmas Tree! O Christmas Tree! Thy leaves are so unchanging!" True to the song, plaintiff Polytree designed and manufactured evergreen and other artificial Christmas trees. Polytree's customers include defendant Tree Classics, an artificial Christmas tree retailer.

Contending that Tree Classics failed to pay for the goods it ordered, Polytree filed a two-count complaint alleging that Tree Classics breached a contract requiring payment of Tree Classic's outstanding balance for 2008 trees and other items (Count I) and breached a contract for sale of goods (Count II). Tree Classics answered and raised affirmative defenses and counterclaims based on alleged flaws with Polytree's faux firs. Polytree's motion for judgment on the pleadings and its motion to dismiss three of Tree Classic's nine counterclaims (unjust enrichment, a claim under the Illinois Deceptive Business Practices Act, and a claim under the

Illinois Deceptive Trade Practices Act, which are Counts IV, VIII and IX of Tree Classics's Second Amended Counterclaim, respectively) are before the court.

For the following reasons: (1) Polytree's motion for judgment on the pleadings as to Count I is granted; (2) Count II is dismissed because the recovery sought in that count duplicates the recovery sought in Count I; (3) Polytree is entitled to judgment on the pleadings as to Tree Classics' counterclaims; and (4) Polytree's motion to dismiss Counts IV, VIII, and IX of Tree Classics' counterclaims is denied as unnecessary.

## I. Background

Through a series of purchase orders, Polytree sold artificial Christmas trees and related goods to Tree Classics, a retailer of artificial Christmas trees. This case centers around Tree Classics's 2008 orders. Beginning on April 23, 2008, Polytree began to deliver artificial Christmas trees and related products to Tree Classics for the 2008 holiday season and Tree Classics accepted Polytree's shipments. Tree Classics was dissatisfied with the lights on some of the pre-lit trees and complained to Polytree. It also did not pay the outstanding invoices totaling $3,209,913.98.

Polytree and Tree Classics subsequently entered into a payment agreement in May of 2009. The agreement stated that Tree Classics had an outstanding balance of $3,209,913.98 and that due to Tree Classics' "financial difficulties" and the "current economic climate," Tree Classics could not pay its bills when they were due. Dkt. 1-1. The agreement required Tree Classics to pay $100,000/month from April of 2009 to July of 2009, $150,000/ month from August of 2009 to September of 2009, and $500,000/month from October of 2009 to January of 2010. Tree Classics further agreed to pay the remainder by December 31, 2010. In consideration for the agreement, Polytree stipulated that it would "forego interest accrued from

the original payment due date" if Tree Classics complied with the payment schedule. *Id*. However, the parties agreed that if Tree Classics failed to meet the payment schedule, interest would accrue "from the original payment due date compounded monthly at a rate of 1% per month." *Id*. Tree Classics's President, Leon Gamze, and one of Polytree's Directors, Paul Cheng, signed the agreement.

Tree Classics did not follow the payment schedule. As of July 12, 2010, Tree Classics had made only three payments to Polytree: $75,000 on May 18, 2009, $100,000 on July 16, 2009, and $100,000 on September 24, 2009. Thus, Polytree filed this action. In Count I, Polytree alleges that Tree Classics breached the payment agreement, while in Count II, it contends that Tree Classics breached the original sales agreements by accepting goods but not paying for them.

In response, Tree Classics asserted that Polytree's trees and products were sub-par and asserted affirmative defenses of set-off, non-merchantability of goods based on allegedly defective lights on pre-lit trees, and lack of consideration for the payment agreement. It also raised nine counterclaims: breach of express warranty (Count I), breach of written contract based on allegedly defective lights on pre-lit trees (Count II), breach of oral agreements to rectify alleged issues with lights (Count III), unjust enrichment because Polytree received money from Tree Classics, but Tree Classics lost more money due to returned trees and repair and shipping costs (Count IV), breach of the implied warranty of merchantability (Count V), breach of the implied warranty of fitness for a particular purpose (Count VI), promissory estoppel based on damages incurred by Tree Classics after it relied on Polytree's promise to deliver trees in the agreed-upon condition (Count VII), and breach of the Illinois Deceptive Business Practices Act (Count VII) and Illinois Deceptive Trade Practices Act (Count IX).

For the following reasons, the court finds that Polytree is entitled to judgment on the pleadings as to Count I. As Polytree notes, the damages it seeks for Count I duplicate those sought in Count II, so Polytree is not entitled to any relief with respect to Count II. In addition, the court agrees with Polytree that its victory on Count I of its complaint fells all of Tree Classics' counterclaims and that Tree Classics also waived those counterclaims by entering into the payment agreement. Moreover, Tree Classics' affirmative defenses have either already been rejected (lack of consideration of the payment agreement), are unavailing as discussed below (setoff) or duplicate a counterclaim (lack of merchantability of trees). Thus, Polytree is entitled to judgment on the pleadings as to Tree Classics' counterclaims and Polytree's motion to dismiss three of Tree Classics' counterclaims is denied as unnecessary.

## II.     Polytree's Motion for Judgment on the Pleadings as to Count I

Polytree moves for judgment on the pleadings as to Count I (breach of the payment agreement). It also contends that it is entitled to judgment on the pleadings as to all of Tree Classics' counterclaims because Tree Classics' agreement to pay the full contractual amount owed means that Tree Classics waived its ability to challenge the amount owed.

### A.     Standard of Review

Under Rule 12(c), "a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.,* 521 F.3d 743, 746 (7th Cir. 2008). A motion for judgment on the pleadings should be granted "only when it appears beyond a doubt" that the non-moving party "cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id.* In deciding the motion, the court must take the facts alleged in the complaint as

true and draw all reasonable inferences in favor of the non-moving party. *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).

      **B.**      **Motion for Judgment on the Pleadings – The Payment Agreement (Count I)**

As noted above, in Count I, Polytree asserts that Tree Classics breached the payment agreement and seeks $3,129,348.49 in damages ($3,209,913.98, which is the full amount under the sales contracts, minus the $275,000 Tree Classics paid pursuant to the payment agreement). To prevail on its breach of contract claim based on the payment agreement, Polytree must establish: (1) the existence of an offer and acceptance and (2) consideration; (3) that the agreement had definite and certain terms; (4) it performed all required conditions; (5) Tree Classics breached the agreement; and (6) Polytree suffered damages. *See, e.g., Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 849 (7th Cir. 2007).

According to Polytree, the payment agreement embodies Tree Classics' admission that it owed Polytree $3,209,913.98 (the full amount due under the sales contracts) and thus conclusively establishes each prong for its breach of contract claim based on the payment agreement. In response, Tree Classics contends that the payment agreement is not supported by consideration because Polygroup was not entitled to the interest that it purported to forego in the contract. The court will not discuss this argument as it has already rejected it. *See* Dkt. 30.

Alternatively, Tree Classics argues that its affirmative defense of setoff and its counterclaim for breach of the implied warranty of merchantability show that there are questions of fact which preclude judgment on the pleadings on Count I.[1] "The right of setoff (also called

---

[1] Tree Classics' counterclaim for breach of the implied warranty of merchantability is substantively the same as Tree Classics' affirmative defense of lack of merchantability, so the court will not discuss this affirmative defense separately.

'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotations omitted). In turn, "[u]nder Illinois law, if the seller of goods is a merchant of goods of the kind being sold, a warranty that the goods are 'merchantable' is implied into a contract for their sale as a matter of law, unless otherwise expressly excluded or modified." *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508, 513 (7th Cir. 1988).

The parties disagree as to whether Polytree's setoff affirmative defense should have been raised as a counterclaim. The court need not resolve this dispute because it does not affect the result as Tree Classics' setoff and merchantability arguments are both based on the underlying contracts for the sale of goods, not the payment agreement. In other words, Tree Classics' arguments boil down to the contention that the trees were worth less than the underlying contract amounts because they had shoddy lights.

These arguments are relevant to a claim for breach of contract based on the underlying contracts for trees and other items. However, they have no bearing on a claim for breach of the payment agreement, which is based on an entirely separate contract that reflects Tree Classics' agreement to make a series of specified payments to Polytree in exchange for Polytree's agreement to forego interest if Tree Classics adhered to the payment schedule. Setoff is, therefore, unavailable. *See ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 708 (7th Cir. 1995) (rejecting defendant's contention that set-off was proper where "purchase orders created [the plaintiff's] rights to the purchase price of the goods that [the defendant] accepted" and the defendant's setoff claim was based on a different contract because "[e]ach party's rights have

their origins in different contracts, and we have determined that such a state of affairs precludes set-off").

Moreover, the payment agreement – which was signed after the 2008 shipments were received and the date to pay for the products had passed – is, unlike the underlying purchase agreements to buy trees and other holiday items, not a contract for the sale of goods. Thus, the UCC's implied warranty of merchantability does not apply to the payment agreement. *See Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 645 (Ill. 2003) (Article 2 of the UCC, which imposes am implied warranty of merchantability, applies to "transactions in goods"); *Fallimento C.Op.M.A. v. Fischer Crane Co.*, 995 F.2d 789, 792-93 (7th Cir. 1993) (promissory notes signed contemporaneously with delivery of equipment were not "separate and distinct" from the underlying agreement for the sale of the equipment because they were part of the underlying transaction and thus were contracts for the sale of goods).

This brings the court to Polytree's motion for judgment on the pleadings as to Count I. The record shows that Tree Classics did not make all of the payments specified in the agreement. Moreover, Tree Classics does not dispute that it failed to comply with the payment agreement. Instead, it argues that Polytree breached the underlying contracts by providing inferior products. Accordingly, the court finds that even when it draws all reasonable inferences in favor of Tree Classics, Polytree is entitled to judgment on the pleadings on its breach of contract claim based on the payment agreement. This means that Polytree's motion for judgment on the pleadings as to Count I based on the payment agreement is granted.

Polytree has requested that the court dismiss Count II (breach of the underlying contracts based on Tree Classics' failure to pay the amounts promised) if it prevails on Count I. Because it has done so, Count II is dismissed.

### C. Motion for Judgment on the Pleadings – Tree Classics' Counterclaims

Next, Polytree asserts that it is entitled to judgment on the pleadings with regard to Tree Classics' counterclaims because Tree Classics waived those counterclaims when it entered into the payment agreement with Polytree. "[W]aiver is the voluntary and intentional relinquishment of a known right." *United States v. Sumner,* 265 F.3d 352, 537 (7th Cir. 2001); *Gallagher v. Lenart,* 226 Ill.2d 208, 229 (Ill. 2007). Waiver can be express or implied "from the conduct, acts or words of the party who is alleged to have waived a right." *Ryder v. Bank of Hickory Hills,* 146 Ill.2d 98, 104-05 (Ill. 1991).

"An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention to waive it." *Id.* An implied waiver must be "clear, unequivocal and decisive." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.* 554 F.3d 1133, 1140 (7th Cir. Ill. 2009). Finally, if the facts regarding the waiver are disputed or "if reasonable minds might differ as to the inferences to be drawn from the undisputed evidence, then the issue becomes a question of fact." *Id.* at 1148.

Here, the parties agree that Tree Classics voiced concerns about the quality of Polytree's pre-lit trees over the years. For example, in 2005, Tree Classics's Leon Gamze wrote to Polytree, stating "[t]he quality this year is not good . . . . [o]verall the quality is a disaster" and asking "[w]hat do I do with 1,000 bad trees?" Dkt. 58. In 2008, Mr. Gamze sent another complaint letter to Polytree, observing:

> [o]nce again, your lights are disgusting. Bad-bad-bad . . . . Your lighting for 2008 is just as bad as 2007. We have a very very serious problem with the lights. The cheap, cheap lights in the brick stores work better and last longer than the bulbs I am paying top dollar for to get the best lights for my customers. My customers are very, very angry because my tree lights have so many problems.

*Id*.

Polytree argues that Tree Classics' decision to sign the payment agreement and pay the full amount owed despite its continuing complaints about the trees means that Tree Classics impliedly waived its right to assert counterclaims. Polytree also stresses that the payment agreement specified the reason Tree Classics had not timely paid its bills and wanted to pay in installments – "[Tree Classics'] financial difficulties and [the] current economic climate" – and did not allude to any lighting quality issues even though Tree Classics had complained to Polytree before the parties executed the agreement.

Conversely, Tree Classics contends that there is no "clear, unequivocal and decisive" evidence of its intent to waive its counterclaims because its repeated complaints about Polytree's products show it did not intend to renounce its right to pursue legal remedies and the absence of any discussion in the payment agreement regarding the quality of Polytree's products demonstrates that Tree Classics "affirmatively did not intend to waive its defenses or claims." Dkt. 58 at 12.

The problem at the root of Tree Classics' position is that it is undisputed that Tree Classics knew about the alleged problems with Polytree's products before it signed the payment agreement but nevertheless signed that agreement, which required it to pay *the entire remaining balance* it owed to Polytree in installments. Tree Classics' unequivocal agreement to pay the entire amount owed is inconsistent with its current contention that it intended to pay less than the full amount owed since Polytree's goods were defective.

This conclusion is supported by the Seventh Circuit's decision in *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133 (7th Cir. 2009). In that case, the plaintiff hired a consultant to prepare a document analyzing losses incurred in connection with a

construction project. Despite expressing frustration with the consultant's work product, the plaintiff paid invoices submitted by the consultant. The plaintiff eventually parted company with the consultant, leaving multiple invoices unpaid, and the consultant agreed to refrain from collection efforts until the plaintiff's underlying lawsuit about the construction project was over.

When the consultant sought payment on the past-due invoices over a year later, the plaintiff indicated that it was dissatisfied with the consultant's work and objected to paying for what it characterized as inadequate work. The *Delta* court found that the plaintiff's failure to object to the invoices within a reasonable time and its payment of the initial invoices meant that the plaintiff could not challenge the amount sought by the consultant because it was an "account stated" (an agreement between a creditor and debtor that a particular amount is owed to the creditor based on an underlying transaction). 554 F.3d at 1137. It also held that the plaintiff impliedly waived its right to damages based on the consultant's alleged breach by paying, and not contesting, the invoices sent before the consultant's termination.

The *Delta* court explained:

> In addition to part payments, [the plaintiff's] active conduct specifically established an account stated for the remaining, unpaid invoices. [The plaintiff] initiated an agreement, that [the consultant] accepted, in which [the consultant] would withhold efforts to collect on the unpaid invoices while [the plaintiff] attempted to resolve the Project dispute through litigation. By this agreement, [the plaintiff] impliedly acknowledged that it owed payment to [the consultant] for unpaid invoices after its last payment on March 9, 2004. It is unreasonable to believe that a transacting business would ask for more time to pay a debt it did not acknowledge it incurred.

*Id*. at 1138.

The court also noted that the record showed that "[a]lthough [the plaintiff] may have been frustrated with [the consultant's] performance, [the plaintiff] continued to pay through its frustration, impliedly acknowledging the debt incurred." *Id*. at 1139. Moreover, the plaintiff

paid invoices after it complained about the consultant's work product. *Id*. The court thus concluded that, "[the plaintiff's] subjective frustration alone did not constitute a refusal to pay the invoices or a contest on the amount billed" because the plaintiff's "behavior was not a valid objection to the account stated." *Id*.

The court then moved onto waiver and found that the plaintiff's payment of invoices after complaining about the quality of the consultant's work "did not reasonably portray [the plaintiff's] objection of payment for the services rendered and does not reflect [the plaintiff's] desire to seek its money back. In fact, these actions established the opposite; even though [the consultant's] work was not what [the plaintiff] expected, [the plaintiff] continuously accepted [the consultant's] performance by paying for it and never once objecting" to the first round of invoices. *Id*. at 1141.

Here, Tree Classics not only asked for more time to pay the entire amount owed but also memorialized its agreement to pay this amount in a written contract containing an installment payment plan. As in *Delta*, "[i]t is unreasonable to believe that a transacting business would ask for more time to pay a debt it did not acknowledge it incurred." *Id*. at 1138.

Moreover, in the *Delta* case, the parties did not reaffirm the total amount owed as they did not enter into a payment agreement. The Seventh Circuit nevertheless found that the plaintiff's payment of some of the invoices waived his ability to contest the total amount owed. In contrast, in the instant case, the parties agreed to a payment schedule for the entire amount owed. Thus, Tree Classics' position is weaker than the plaintiff's position in *Delta*, which the Seventh Circuit rejected.

In addition, despite Tree Classics' complaints about the quality of Polytree's pre-lit products included in the 2008 shipments and prior years' shipments, it signed the payment

agreement, which requires it to pay the full amount owed for the 2008 shipments. While Tree Classics may have maligned Polytree's products, the fact that it "continued to pay through its frustration . . . impliedly acknowledg[ed] the debt incurred" and supports a finding of implied waiver. *See id*. Finally, Tree Classics unquestionably was on notice of the alleged defects in the 2008 shipments and complained to Polytree, but nevertheless agreed to pay for the entire balance owed for 2008.

In sum, Tree Classics' current position is revisionist history. It agreed to pay the full amount even though it characterized the lighting on the 2008 shipment of trees it previously received as "disgusting," "[b]ad-bad-bad," and "just as bad as 2007" and advised Polytree that Tree Classics' customers were "very, very angry because [the] tree lights have so many problems." Dkt. 58. Tree Classics' decision to complain but pay the full amount with no reservation of rights, even when viewed in the light most favorable to it, is simply inconsistent with its argument today that it was not obligated to pay the full amount due to product defects.

The court thus finds that the payment agreement containing Tree Classics' promise to pay the full contract amount in installments constitutes an implied waiver of Tree Classics' ability to pursue counterclaims. Discovery would not alter this conclusion because the court has accepted Tree Classics' position as true for the purpose of Polytree's motion and given Tree Classics the benefit of all possible inferences. Accordingly, Polytree's motion for judgment on the pleadings as to Tree Classics' counterclaims is granted.

## III. Conclusion

For the above reasons, (1) Polytree's motion for judgment on the pleadings as to Count I and Tree Classics' counterclaims [Dkt. 55] is granted; (2) Count II is dismissed because the recovery sought in that count duplicates the recovery sought in Count I; and (3) Polytree's motion to dismiss Counts IV, VII, and IX of Tree Classics' counterclaims [Dkt. 37] is denied as unnecessary. The clerk is directed to enter judgment and terminate this case from the court's docket.

DATE: November 22, 2010

_____
Blanche M. Manning
United States District Judge